IN THE SUPREME COURT OF NORTH CAROLINA

 2022-NCSC-12

 No. 270PA20

 Filed 11 February 2022

 STATE OF NORTH CAROLINA

 v.
 DATORIUS LANE MCLYMORE

 On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision

 of the Court of Appeals, No. COA19-428, 2020 WL 2130670 (N.C. Ct. App. May 5,

 2020) (unpublished), finding no error in a judgment entered on 26 July 2018 by Judge

 Claire V. Hill in Superior Court, Cumberland County. Heard in the Supreme Court

 on 1 September 2021.

 Joshua H. Stein, Attorney General, by Marc X. Sneed, Special Deputy Attorney
 General, for the State-appellee.

 Glenn Gerding, Appellate Defender, by Sterling Rozear, Assistant Appellate
 Defender, for defendant-appellant.

 EARLS, Justice.

¶1 This case requires us to decide whether the trial court committed reversible

 error in instructing the jury that the defendant, Datorius Lane McLymore, could not

 claim self-defense to justify his use of deadly force because he was also in violation of

 N.C.G.S. § 14-415.1, which makes it a Class G felony for an individual with a prior

 felony conviction to possess a firearm. In answering this question, we must interpret
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 the scope and meaning of certain provisions of North Carolina’s “Stand Your Ground”

 Law. Specifically, we must interpret a provision which states in relevant part that a

 defendant may not claim self-defense if he or she “used defensive force and . . . [w]as

 attempting to commit, committing, or escaping after the commission of a felony.”

 N.C.G.S. § 14-51.4 (2021). We conclude that this provision requires the State to prove

 an immediate causal nexus between a defendant’s attempt to commit, commission of,

 or escape after the commission of a felony and the circumstances giving rise to the

 defendant’s perceived need to use force.

¶2 Because it failed to instruct the jury on this causal nexus requirement, the trial

 court’s jury instructions were erroneous. Further, although McLymore admitted that

 he had previously been convicted of a felony offense and was possessing a firearm at

 the time he used deadly force, the trial court’s failure to properly instruct the jury

 denied him the opportunity to dispute the existence of a causal nexus between his

 violation of N.C.G.S. § 14-415.1 and his use of force and to assert any affirmative

 defenses. Because we do not interpret N.C.G.S. § 14-51.4(1) to categorically prohibit

 individuals with a prior felony conviction from ever using a firearm in self-defense,

 we cannot say that the trial court’s failure to instruct on the causal nexus

 requirement was not prejudicial with respect to McLymore’s purported violation of

 N.C.G.S. § 14-415.1.

¶3 However, at trial, McLymore was also convicted of another felony offense,
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 robbery with a dangerous weapon. This outcome and the uncontroverted facts

 conclusively establish that McLymore’s commission of robbery with a dangerous

 weapon immediately followed the confrontation during which he used deadly force.

 Under these circumstances, McLymore could not have been prejudiced by the trial

 court’s issuance of the erroneous jury instruction because, based on the jury’s verdict,

 the immediate causal nexus between his use of force and his commission of the

 disqualifying felony of robbery with a dangerous weapon was established. Thus,

 under N.C.G.S. § 14-51.4(1), he was disqualified from claiming the justification of

 self-defense. Accordingly, we modify and affirm the decision of the Court of Appeals.

 I. Background.

¶4 In April 2014, McLymore was working as a door-to-door magazine salesman.

 After completing a sale, he used the proceeds to purchase laundry detergent and food.

 Shortly thereafter, he quit his job with the sales company. Later that day, his

 supervisor at the sales company, David Washington, met McLymore at a local hotel.

 The two left together in Washington’s vehicle. When Washington asked McLymore

 about the proceeds from his magazine sale, McLymore responded that he “spent it on

 food and washing powder.” According to McLymore, while the vehicle was stopped at

 a traffic light, Washington punched McLymore in his jaw, grabbed him by the shirt,

 and pushed him against the door. In response, McLymore pulled out a gun, “closed

 [his] eyes[,] and fired two” shots at Washington, killing him. McLymore then pulled
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 Washington’s body out of the driver’s seat, left it on the ground, and fled the scene in

 Washington’s vehicle. McLymore evaded police for over an hour before being

 apprehended.

¶5 On 5 January 2015, McLymore was indicted for the first-degree murder of

 Washington, felonious speeding to elude arrest, and robbery with a dangerous

 weapon for taking Washington’s vehicle. At trial, McLymore admitted that he had

 previously been convicted of multiple felony offenses including common law robbery,

 larceny of a firearm, and assault inflicting serious bodily injury. The trial court also

 admitted evidence that twenty days before McLymore shot Washington, McLymore

 was involved in another alleged robbery, during which he entered the victim’s house,

 fought with the victim over money, and then took the victim’s gun and shot him. The

 State presented evidence that McLymore used this same gun to shoot Washington.

¶6 At trial, McLymore did not dispute that he killed Washington. Instead, he

 claimed that he justifiably used deadly force in self-defense. During the charge

 conference, the trial court explained that it would instruct the jury on self-defense

 but that “it is disqualifying for self-defense under State [v.] Crump that he was a felon

 in possession of a firearm, which is a disqualifying felony [under N.C.G.S. § 14-

 51.4(1)].” McLymore objected, arguing that N.C.G.S. § 14-51.4(1) did not apply

 because he was claiming perfect self-defense under the common law, and that even if

 N.C.G.S. § 14-51.4(1) did apply, it would violate his rights to interpret this provision
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 to categorically bar individuals with prior felony convictions from ever using a firearm

 in self-defense. The trial court overruled his objection and instructed the jury, in

 relevant part, that

 [t]he Defendant is not entitled to the benefit of self-defense
 if he was committing the felony of possession of a firearm
 by a felon. . . . [T]he State must prove beyond a reasonable
 doubt, among other things, that the Defendant did not act
 in self-defense, or that the Defendant was committing the
 felony of possession of a firearm by felon if the Defendant
 did act in self-defense.

 The jury found McLymore guilty of all charged offenses. He was sentenced to life

 without the possibility of parole.

¶7 On appeal, the Court of Appeals rejected McLymore’s argument that N.C.G.S.

 § 14-51.4 “only applies to statutory self-defense” as created by N.C.G.S. § 14-51.3 and

 not “common law self-defense,” which McLymore attempted to invoke at trial.1 State

 v. McLymore, No. COA19-428, 2020 WL 2130670, at *6 (N.C. Ct. App. May 5, 2020)

 (unpublished). According to the Court of Appeals, while another provision of the

 statutory law of self-defense expressly provided that it was “not intended to repeal or

 limit any other defense that may exist under the common law,” the General Assembly

 chose not to “carve out a [ ] common law exception” to sections 14-51.3 and 14-51.4.

 1 The Court of Appeals also held that the trial court did not plainly err when it
 admitted evidence relating to the earlier incident when McLymore allegedly shot a man
 during a robbery. State v. McLymore, No. COA19-428, 2020 WL 2130670, at *6 (N.C. Ct. App.
 May 5, 2020) (unpublished). This issue, however, is not before this Court.
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 Id. at *7. Therefore, the Court of Appeals concluded that sections 14-51.3 and 14-51.4

 wholly “supplant[ ]” the common law of self-defense

 in situations where (1) the defendant “was attempting to
 commit, committing, or escaping after the commission of a
 felony”; (2) the defendant “[i]nitially provokes the use of
 force against himself or herself” unless he or she was “in
 imminent danger of death or serious bodily harm”; or (3)
 “the person who was provoked continues or resumes the
 use of force” after the defendant withdraws.

 Id. (alteration in original) (quoting N.C.G.S. § 14-51.4 (2019)). Applying the precedent

 it had established in State v. Crump, 259 N.C. App. 144 (2018), in which the Court of

 Appeals held that N.C.G.S. § 14-51.4(1) only required proof that a defendant was

 committing a felony at the time he or she used assertedly defensive force, the Court

 of Appeals concluded that McLymore was not entitled to invoke the statutory right to

 self-defense because “when [McLymore] shot Washington, he was committing the

 offense of possession of a firearm by a felon which is punishable as a Class G felony

 under N.C.[G.S. §] 14-415.1.” McLymore, 2020 WL 2130670, at *7.

¶8 This Court allowed McLymore’s petition for discretionary review.

 II. Sections 14-51.3 and 14-51.4 supplant the common law of self-defense.

¶9 McLymore first argues that the Court of Appeals erred in concluding that

 N.C.G.S. § 14-51.4(1) applies in his case. McLymore contends that he invoked the

 common law right to self-defense, which he argues continues to exist separate and

 apart from the statutory right to self-defense created by N.C.G.S. § 14-51.3. Thus, in
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 McLymore’s view, even if N.C.G.S. § 14-51.4(1) bars him from invoking the statutory

 right to self-defense, it does not disqualify him from justifying the use of defensive

 force by invoking what he asserts is his still-existing common law right to self-

 defense. In response, the State contends that the General Assembly has exercised its

 authority to displace the common law through statutory enactment and that once the

 General Assembly chose to codify the right to self-defense, the common law right to

 self-defense was entirely extinguished.

¶ 10 No one disputes that the General Assembly possesses the authority to displace

 the common law through legislative action. As we have previously explained, “the

 General Assembly is the policy-making agency of our government, and when it elects

 to legislate in respect to the subject matter of any common law rule, the statute

 supplants the common law rule and becomes the public policy of the State in respect

 to that particular matter.” McMichael v. Proctor, 243 N.C. 479, 483 (1956). Instead,

 the question is whether the General Assembly intended to add to the common law

 right to perfect self-defense or abrogate it in its entirety.

¶ 11 Although not expressly stated, the General Assembly’s intention to abolish the

 common law right to perfect self-defense is unmistakable. Our caselaw describes the

 common law of perfect self-defense as follows:

 The law of perfect self-defense excuses a killing
 altogether if, at the time of the killing, these four elements
 existed:
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 (1) it appeared to defendant and he believed it to be
 necessary to kill the deceased in order to save himself from
 death or great bodily harm; and

 (2) defendant’s belief was reasonable in that the
 circumstances as they appeared to him at the time were
 sufficient to create such a belief in the mind of a person of
 ordinary firmness; and

 (3) defendant was not the aggressor in bringing on
 the affray, i.e., he did not aggressively and willingly enter
 into the fight without legal excuse or provocation; and

 (4) defendant did not use excessive force, i.e., did not
 use more force than was necessary or reasonably appeared
 to him to be necessary under the circumstances to protect
 himself from death or great bodily harm.

 State v. Norris, 303 N.C. 526, 530 (1981). Section 14-51.3 closely tracks this earlier

 common law definition of the right to self-defense in providing that an individual may

 use force “against another when and to the extent that the person reasonably believes

 that the conduct is necessary to defend himself or herself or another against the

 other’s imminent use of unlawful force.” N.C.G.S. § 14-51.3(a) (2021). Further, as the

 Court of Appeals correctly explained, section 14-51.3 notably lacks a “carve out”

 explicitly conveying the General Assembly’s intention to preserve the common law.

 McLymore, 2020 WL 2130670, at *7. Together, these facts indicate that the General

 Assembly meant to replace the existing common law right to perfect self-defense with

 a new statutory right.

¶ 12 Accordingly, we conclude that after the General Assembly’s enactment of

 N.C.G.S. § 14-51.3, there is only one way a criminal defendant can claim perfect self-
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 defense: by invoking the statutory right to perfect self-defense. Section 14-51.3

 supplants the common law on all aspects of the law of self-defense addressed by its

 provisions.2 Section 14-51.4 applies to “[t]he justification described in . . . [N.C.]G.S.

 [§] 14-51.3.” N.C.G.S. § 14-51.4 (2021). Therefore, when a defendant in a criminal case

 claims perfect self-defense, the applicable provisions of N.C.G.S. § 14-51.3—and, by

 extension, the disqualifications provided under N.C.G.S. § 14-51.4—govern. Because

 McLymore claimed perfect self-defense, and the only right to perfect self-defense

 available in North Carolina was the right provided by statute, the trial court did not

 err in delivering an instruction on the felony disqualifier contained in N.C.G.S. § 14-

 51.4(1), which applies under the circumstances of this case.

 III. The trial court erroneously stated the law of self-defense, but this error
 could not have prejudiced McLymore.

¶ 13 Because we interpret subsection 14-51.4(1) to apply to McLymore’s claim of

 perfect self-defense, we next consider the scope of the felony disqualifier. According

 to McLymore, the trial court erred in failing to instruct the jury that the State was

 required to prove an immediate causal nexus between his commission of a felony

 offense and the circumstances giving rise to his perceived need to use defensive force.

 In his view, it would be absurd and contrary to the General Assembly’s intent to

 2 However, to the extent the relevant statutory provisions do not address an aspect of

 the common law of self-defense, the common law remains intact. See McMichael v. Proctor,
 243 N.C. 479, 483 (1956) (“So much of the common law as has not been abrogated or repealed
 by statute is in full force and effect within this State.”).
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 interpret N.C.G.S. § 14-51.4(1) to categorically bar any individual previously

 convicted of a felony from ever using a firearm in self-defense. In response, the State

 argues first that McLymore failed to preserve the causal nexus argument and second

 that N.C.G.S. § 14-51.4(1), by its plain terms, does not require the State to prove

 anything more than that McLymore was committing a felony offense when he used

 defensive force. In the alternative, the State argues that even if N.C.G.S. § 14-51.4(1)

 incorporates a causal nexus requirement, McLymore could not have been prejudiced

 by the trial court’s misstatement of the law of self-defense.

¶ 14 We conclude that McLymore has preserved the causal nexus argument and

 that N.C.G.S. § 14-51.4(1) does incorporate a causal nexus requirement. The Court of

 Appeals’ decision to the contrary in State v. Crump, 259 N.C. App. 144 (2018) and

 subsequent decisions relying on Crump’s causal nexus holding are overruled.

 Accordingly, the trial court committed an instructional error when it misstated the

 requirements of the felony disqualifier at McLymore’s trial. However, for the reasons

 described below, we agree with the State that McLymore could not have been

 prejudiced.

 A. McLymore preserved his causal nexus argument.

¶ 15 At trial, McLymore objected to the trial court’s issuance of a jury instruction

 addressing the requirements of N.C.G.S. § 14-51.4(1). Broadly, he offered two grounds

 for his objection. First, he asserted that it was inappropriate to deliver any instruction
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 on the felony disqualifier because he was invoking the common law right to self-

 defense, rather than the statutory right to self-defense. We have already rejected this

 argument. Second, he asserted that the trial court misstated the law of self-defense

 by instructing the jury that if it found he was violating N.C.G.S. § 14-415.1 when he

 used force against Washington, he was disqualified from attempting to justify his use

 of force by claiming self-defense. McLymore’s objection to the substance of the trial

 court’s self-defense instruction was sufficient to preserve the causal nexus argument

 for appellate review.

¶ 16 Rule 10 of the North Carolina Rules of Appellate Procedure contains a

 “specificity requirement.” State v. Bursell, 372 N.C. 196, 199 (2019). “In order to

 preserve an issue for appellate review, a party must have presented to the trial court

 a timely request, objection, or motion, stating the specific grounds for the ruling the

 party desired the court to make if the specific grounds were not apparent from the

 context.” N.C. R. App. P. 10(a)(1). Accordingly, if a party fails to state the grounds for

 an objection and the grounds are not “apparent from the context,” id., a party’s

 objection does not preserve an issue for appellate review. Applying Rule 10, we have

 held that an issue was unpreserved when the substance of a party’s objection at trial

 was either irreconcilable with or unrelated to the substance of the defendant’s

 argument on appeal. See, e.g., State v. Fair, 354 N.C. 131, 152 (2001) (holding that

 the defendant failed to preserve issue for appellate review because “defendant stated
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 in no uncertain terms at trial that the evidence proffered was not character evidence,

 [yet] he now seeks to establish error on appeal by asserting that the evidence was

 indeed character evidence”); State v. Jones, 342 N.C. 523, 535 (1996) (holding that “a

 general objection to the admission of” certain evidence did not preserve entirely

 unrelated argument raised on appeal asserting that the “chain of custody of the

 [evidence] was broken”).

¶ 17 Rule 10’s specificity requirement serves two purposes. First, the specificity

 requirement “encourage[s] the parties to inform the trial court of errors in its

 instructions so that it can correct the instructions and cure any potential errors before

 the jury deliberates on the case and thereby eliminate the need for a new trial.” State

 v. Odom, 307 N.C. 655, 660 (1983); see also Bursell, 372 N.C. at 199 (“The specificity

 requirement in Rule 10(a)(1) prevents unnecessary retrials by calling possible error

 to the attention of the trial court so that the presiding judge may take corrective

 action if it is required.”). Second, the specificity requirement helps to “contextualize[ ]

 the objection for review on appeal, thereby enabling the appellate court to identify

 and thoroughly consider the specific legal question raised by the objecting party.”

 Bursell, 372 N.C. at 199. However, Rule 10 does not bind a party on appeal only to

 arguments identical to the ones offered in support of an objection at trial. If a party’s

 objection puts the trial court and opposing party on notice as to what action is being

 challenged and why the challenged action is thought to be erroneous—or if the what
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 and the why are “apparent from the context,” N.C. R. App. P. 10(a)(1)—the specificity

 requirement has been satisfied.

¶ 18 In this case, the grounds McLymore offered in support of his objection at trial

 were related to and fairly encompass the causal nexus theory he advances on appeal.

 McLymore did not fail to “bring [this alleged error] to the trial court’s attention.” State

 v. Wiley, 355 N.C. 592, 615 (2002). At trial and at every subsequent stage of this

 proceeding, McLymore has argued that the trial court erred in delivering an

 instruction on N.C.G.S. § 14-51.4. In the alternative, he has consistently argued that

 if delivering an instruction on N.C.G.S. § 14-51.4 were appropriate, then the trial

 court misstated the scope and applicability of the felony disqualifier. This objection

 put the trial court on notice that McLymore believed (1) that the trial court would err

 if it delivered an instruction explaining the felony disqualifier in the way it had

 proposed, and (2) that this instruction was erroneous because it would mean that

 McLymore, and all individuals with a prior felony conviction, were categorically

 prohibited from ever using a firearm in self-defense. The trial court was afforded an

 opportunity to reconsider how it was characterizing N.C.G.S. § 14-51.4, and the State

 was afforded an opportunity to explain why it believed the trial court’s description of

 the law was accurate.

¶ 19 Further, the trial transcript demonstrates that the connection between

 McLymore’s objection and the existence (or lack thereof) of the causal nexus
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 requirement was readily “apparent from the context.” N.C. R. App. P. 10(a)(1). At

 trial, in response to McLymore’s objection, the State argued that “based on recent

 case law, the State v. Crump [decision], the statutory disqualification would apply

 since the Defendant was a felon in possession of a firearm at the time of the offense.”

 The trial court then expressly relied on the holding of Crump to justify its decision to

 instruct the jury that “if they find that [McLymore] was committing the felony of

 possession of a firearm by a felon, then that disqualifies him from the self-defense.”

 These explicit references to Crump’s holding make clear that the parties and the trial

 court were all on notice at trial of the argument that N.C.G.S. § 14-51.4(1)

 incorporates a causal nexus requirement.

¶ 20 Accordingly, the requirements of N.C. R. App. P. 10(a)(1), including the

 specificity requirement, were met in this case. McLymore preserved the causal nexus

 argument for appellate review.

 B. Subsection 14-51.4(1) incorporates a causal nexus requirement.

¶ 21 Having determined that McLymore preserved the causal nexus argument, we

 next consider whether N.C.G.S. § 14-51.4(1) requires the State to prove an immediate

 causal nexus between the defendant’s commission of a felony offense and the

 circumstances giving rise to his or her use of force. We conclude that it does.

¶ 22 Section 14-51.4 provides that “[t]he justification described in [N.C.]G.S. [§] 14-

 51.2 and [N.C.]G.S. [§] 14-51.3 is not available to a person who used defensive force
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 and who . . . [w]as attempting to commit, committing, or escaping after the

 commission of a felony.” N.C.G.S. § 14-51.4 (2021). Admittedly, the plain language of

 the statute does not support McLymore’s position. However, “where a literal

 interpretation of the language of a statute will lead to absurd results, or contravene

 the manifest purpose of the Legislature, as otherwise expressed, the reason and

 purpose of the law shall control and the strict letter thereof shall be disregarded.”

 State v. Holloman, 369 N.C. 615, 628 (2017) (quoting State v. Barksdale, 181 N.C.

 621, 625 (1921)). A literal interpretation of N.C.G.S. § 14-51.4(1) would produce

 absurd consequences inconsistent with the General Assembly’s “manifest purpose.”

¶ 23 Subsection 14-51.4(1) was enacted by the General Assembly in 2011 as part of

 a statute titled in relevant part “An Act to Provide When a Person May Use Defensive

 Force.” S.L. 2011-268, 2011 N.C. Sess. Laws 1002. Commonly known as the “Stand

 Your Ground” Law, the Act “restate[d] the law [of self-defense] in some respects and

 broaden[ed] it in others.” John Rubin, The New Law of Self Defense?, North Carolina

 Criminal Law: A UNC School of Government Blog (Aug. 17, 2011),

 https://nccriminallaw.sog.unc.edu/the-new-law-of-self-defense. Notably, the Act

 established that an individual who is lawfully in his or her home, motor vehicle, or

 workplace “does not have a duty to retreat from an intruder,” even before using deadly

 force, under most circumstances. N.C.G.S. §§ 14-51.2(f). Similarly, under most

 circumstances there is no duty for a person to retreat “in any place he or she has the
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 lawful right to be.” 14-51.3(a) (2021); see also State v. Coley, 375 N.C. 156, 161 (2020)

 (“Under [the Act] a person does not have a duty to retreat but may stand his ground

 against an intruder.”). The overall consequence of the Act was to make self-defense

 more widely available as a justification for the use of force in North Carolina.

¶ 24 The State contends that a literal interpretation of the felony disqualifier

 reflects “a sensible broadening of the common-law defensive force concept of fault,

 with the intended purpose being to limit the protections of the Act to the law-abiding.”

 The State is correct that the common law of self-defense required consideration of a

 defendant’s “fault” when determining if the defendant could justify his or her use of

 force as self-defense. However, a literal interpretation of the felony disqualifier is

 fundamentally inconsistent with common law principles.

¶ 25 At common law, a defendant’s “fault” was assessed solely by reference to that

 defendant’s role in precipitating the confrontation during which he or she used force.

 A defendant was entitled to use self-defense only “if he has not himself created the

 necessity for the assault or brought the trouble upon himself by some unlawful act.”

 State v. Pollard, 168 N.C. 116, 122 (1914) (emphases added). Thus, with very few

 exceptions, a defendant whose actions led to the confrontation during which he or she

 used force was precluded from claiming that his or her use of force was justified as

 an exercise of the right to self-defense. See State v. Bell, 338 N.C. 363, 387 (1994).

 But, at common law, no group of defendants was categorically prohibited from
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 invoking the right to self-defense—a defendant was prohibited from invoking self-

 defense only if it was in some sense the defendant’s “fault” that the confrontation

 occurred.

¶ 26 In this light, McLymore’s proposed interpretation of N.C.G.S. § 14-51.4(1) is

 the one that reflects “a sensible broadening of the common-law defensive force concept

 of fault.” It reflects the reasonable presumption that a defendant who uses force in a

 confrontation which resulted from his or her “attempting to commit, committing, or

 escaping after the commission of a felony” contributed to the circumstances giving

 rise to the need to use force. N.C.G.S. § 14-51.4(1). This interpretation would expand

 the common law while adhering to its basic principles. By contrast, the State’s

 proposed interpretation of N.C.G.S. § 14-51.4(1) would reflect a profound rupture

 with the common law. The State’s proposed interpretation would transform the

 meaning of “fault” by eliminating the need to examine the defendant’s culpability for

 creating the circumstance giving rise to the defendant’s need to use defensive force.

¶ 27 Under the State’s proposed interpretation, “a woman in possession of a little

 more than one and a half ounces of marijuana, a felony in North Carolina, could not

 rely on self-defense to justify the use of defensive force if her abusive boyfriend, for

 reasons unrelated to her marijuana possession, began to beat and threaten to kill

 her.” John Rubin, The Statutory Felony Disqualification for Self-Defense, North

 Carolina Criminal Law: A UNC School of Government Blog (June 7, 2016),
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 https://nccriminallaw.sog.unc.edu/statutory-felony-disqualification-self-defense. An

 individual who had previously been convicted of a felony and kept an antique rifle in

 his or her attic could not rely on self-defense to justify the use of defensive force if he

 or she was threatened by an armed intruder, even if the individual did not use that

 rifle or any other firearm in repelling the intrusion. In each of these cases, the

 individual claiming self-defense would in no way be at “fault” as that concept was

 understood at common law. Nonetheless, absent a causal nexus requirement, each

 individual would be required to choose between submitting to an attacker and

 submitting to a subsequent criminal conviction.

¶ 28 Of course, the General Assembly does possess the authority to alter or abrogate

 even fundamental common law principles through statutory enactment. Still,

 statutes which alter common law rules should be interpreted against the backdrop of

 the common law principles being displaced. See Seward v. Receivers of Seaboard Air

 Line Ry., 159 N.C. 241, 245–46 (1912) (“Whether the statute affirms the rule of the

 common law on the same point, or whether it supplements it, supersedes it, or

 displaces it, the legislative enactment must be construed with reference to the

 common law, for in this way alone is it possible to reach a just appreciation of its

 purpose and effect.” (quoting Henry Campbell Black, Handbook on the Construction

 and Interpretation of the Laws (1886))). It is doubtful that the General Assembly

 intended to completely disavow a fundamental common law principle in a statute
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 which otherwise closely hews to the common law.

¶ 29 The State’s proposed interpretation of N.C.G.S. § 14-51.4(1) also raises

 substantial constitutional concerns. If self-defense is an “inherent right,” State v.

 Holland, 193 N.C. 713, 718 (1927), a statute which precludes defendants from

 claiming self-defense for reasons entirely unconnected to the circumstances giving

 rise to their need to use force would potentially tread upon rights guaranteed by the

 North Carolina Constitution. See N.C. Const. art. I, § 1 (“[A]ll persons . . . are endowed

 by their Creator with certain inalienable rights[ ] . . . among these are life, liberty,

 the enjoyment of the fruits of their own labor, and the pursuit of happiness.”);

 Cf. Perkins v. State, 576 So. 2d 1310, 1314 (Fla. 1991) (Kogan, J., concurring) (“The

 right to fend off an unprovoked and deadly attack is nothing less than the right to life

 itself.”). Although “[t]he state clearly has a compelling state interest in disallowing

 the use of self defense when a person’s own unprovoked, aggressive, and felonious

 acts set in motion an unbroken chain of events leading to a killing or other injury,”

 an interpretation of N.C.G.S. § 14-51.4(1) which allowed the State to deprive an

 individual of “the right to defend life and liberty” for other less compelling reasons

 would be on much shakier constitutional ground. Perkins, 576 So. 2d at 1314–15

 (Kogan, J., concurring).

¶ 30 The State’s proposed categorical bar on the use of self-defense for those

 engaged in the commission of any felony is inconsistent with longstanding common
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 law principles, incongruous with legislative intent, raises significant constitutional

 issues, and would produce absurd results. Cf. Mayes v. State, 744 N.E.2d 390, 393

 (Ind. 2001) (“A literal application of the contemporaneous crime exception would

 nullify claims for self-defense in a variety of circumstances and produce absurd

 results in the process.”). Accordingly, we hold that in order to disqualify a defendant

 from justifying the use of force as self-defense pursuant to N.C.G.S. § 14-51.4(1), the

 State must prove the existence of an immediate causal nexus between the defendant’s

 disqualifying conduct and the confrontation during which the defendant used force.

 The State must introduce evidence that “but for the defendant” attempting to commit,

 committing, or escaping after the commission of a felony, “the confrontation resulting

 in injury to the victim would not have occurred.” Mayes, 744 N.E.2d at 394. Here, the

 trial court did not instruct the jury on this causal nexus requirement. Therefore, the

 jury instructions it delivered were erroneous.

 C. The trial court’s error was not prejudicial because the jury necessarily
 established an immediate causal nexus between McLymore’s use of
 force and his commission of a felony offense.

¶ 31 To establish that the trial court’s instructional error requires vacating his first-

 degree murder conviction, McLymore must demonstrate “a reasonable possibility

 that, had the error in question not been committed, a different result would have been

 reached at the trial out of which the appeal arises.” N.C.G.S. § 15A-1443(a) (2021).

 Ordinarily, due process requires allowing the jury to determine whether or not a
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 defendant was engaged in disqualifying conduct bearing an immediate causal nexus

 to the circumstances giving rise to his or her use of force. See Apprendi v. New Jersey,

 530 U.S. 466, 477 (2000) (explaining every criminal defendant’s right to a have a jury

 determine “every fact necessary to constitute the crime with which he is charged”).

 However, under the circumstances of this case, we are able to conclude that the trial

 court’s instructional error could not have prejudiced McLymore.

¶ 32 The State’s primary argument is that McLymore could not have been

 prejudiced because he had previously been convicted of a felony offense and was in

 possession of a firearm when he shot Washington. Under North Carolina law, it is a

 Class G felony for “any person who has been convicted of a felony to purchase, own,

 possess, or have in his custody, care, or control any firearm or any weapon of mass

 death and destruction.” N.C.G.S. § 14-415.1(a) (2021). McLymore does not dispute

 that he had previously been convicted of multiple felony offenses and that he was

 possessing the firearm he used to shoot Washington. Still, these facts do not

 conclusively establish that McLymore could not have been prejudiced by the trial

 court’s failure to instruct the jury on the causal nexus requirement.

¶ 33 McLymore was not indicted for violating N.C.G.S. § 14-415.1. He was not

 afforded the opportunity to raise any affirmative defenses to the State’s assertion that

 he was committing a felony offense, such as the defense of necessity. See State v.

 Mercer, 373 N.C. 459, 463 (2020) (“[I]n narrow and extraordinary circumstances,
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 justification may be available as a defense to a charge under N.C.G.S. § 14-415.1.”).

 Further, the jury was not afforded the opportunity to decide whether McLymore’s

 possession of the firearm was causally connected to the initiation of a confrontation

 between himself and Washington, which is the operative question under N.C.G.S.

 § 14-51.4(1). To accept the State’s argument on this ground would be to effectively

 hold that all individuals with a prior felony conviction are forever barred from using

 a firearm in self-defense under any circumstances. This would be absurd.

¶ 34 However, the jury did determine beyond a reasonable doubt that McLymore

 was engaged in the commission of a different felony offense when he shot Washington:

 robbery with a dangerous weapon in violation of N.C.G.S. § 14-87. At trial, the trial

 court instructed the jury that

 [i]f you find from the evidence beyond reasonable doubt
 that on or about the alleged date the Defendant had in the
 Defendant’s possession a firearm and took and carried
 away property from the person or presence of a person
 without that person’s voluntary consent by endangering or
 threatening that person—threatening that person’s life
 with the use or threatened [use] of a firearm, the
 Defendant knowing that the Defendant was not entitled to
 take the property and intending to deprive the person of its
 use permanently, it would be your duty to return a verdict
 of guilty. If you do not so find or have a reasonable doubt
 as to one or more of these things, it would be your duty to
 return a verdict of not guilty.
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 The jury found McLymore guilty of robbery with a dangerous weapon. 3 Because one

 of the elements of robbery with a dangerous weapon was McLymore’s use or

 threatened use of a firearm, the jury finding McLymore guilty of this offense meant

 that the jury determined beyond a reasonable doubt that McLymore’s felonious

 conduct was immediately causally connected to the circumstances giving rise to his

 shooting Washington. Based upon the outcome of McLymore’s trial, it is indisputable

 that there existed an immediate causal nexus between his felonious conduct and the

 confrontation during which he used assertedly defensive force, and the felony

 disqualifier applies to bar his claim of self-defense.

¶ 35 Stated another way, while the jury instruction the trial court gave on this issue

 was erroneous, a permissible jury instruction would state:

 the Defendant is not entitled to the benefit of self-defense
 if he was attempting to commit, committing, or escaping
 after the commission of, the felony of robbery with a
 dangerous weapon. . . . [T]he State must prove beyond a
 reasonable doubt, among other things, that the Defendant

 3 “The essential elements of robbery with a dangerous weapon are: ‘(1) an unlawful

 taking or an attempt to take personal property from the person or in the presence of another,
 (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a
 person is endangered or threatened.’ ” State v. Haselden, 357 N.C. 1, 17 (2003) (quoting State
 v. Call, 349 N.C. 382, 417 (1998)); see also N.C.G.S. § 14-87 (2021). Further, “[t]o be found
 guilty of robbery with a dangerous weapon, the defendant's threatened use or use of a
 dangerous weapon must precede or be concomitant with the taking, or be so joined by time
 and circumstances with the taking as to be part of one continuous transaction.” State v. Olson,
 330 N.C. 557, 566 (1992). Thus, because self-defense is not a defense to this charge, and
 because the jury’s determination of guilt necessarily means the jury found McLymore’s use
 of a firearm temporally and causally connected to the felony offense, McLymore cannot argue
 that there is a reasonable possibility that a properly instructed jury would have returned a
 different verdict on the charge of robbery with a dangerous weapon.
 STATE V. MCLYMORE

 2022-NCSC-12

 Opinion of the Court

 did not act in self-defense, or that the Defendant was
 attempting to commit, committing, or escaping after the
 commission of the felony of robbery with a dangerous
 weapon if the Defendant did act in self-defense but that
 there was an immediate causal connection between
 Defendant’s use of force and his felonious conduct.

 Because the State did prove to the jury’s satisfaction that McLymore committed the

 felony offense of robbery with a deadly weapon, and based on the uncontroverted

 facts, McLymore cannot establish that he was prejudiced in any way by the trial

 court’s issuance of the legally erroneous jury instruction.

 IV. Conclusion.

¶ 36 The trial court misstated the law of self-defense by failing to instruct the jury

 that the felony disqualifier contained in N.C.G.S. § 14-51.4(1) requires the State to

 prove an immediate causal nexus between the defendant’s disqualifying felonious

 conduct and the circumstances giving rise to the defendant’s use of defensive force.

 Nonetheless, McLymore cannot prove prejudice in this case because the jury

 determined beyond a reasonable doubt that his commission of robbery with a

 dangerous weapon was immediately causally connected to his shooting Washington.

 Accordingly, we modify and affirm the decision of the Court of Appeals.

 MODIFIED AND AFFIRMED.

 Justice BERGER did not participate in the consideration or decision of this

 case.
 Chief Justice NEWBY concurring in the result.

¶ 37 I agree with the majority’s determination that sections 14-51.3 and 14-51.4

 supplant the common law with respect to perfect self-defense. However, because

 defendant failed to preserve his causal nexus argument for appellate review, this

 Court should not address it. Further, even if defendant did preserve his causal nexus

 argument, section 14-51.4 does not require the State to prove a causal nexus between

 a defendant’s commission of a felony and his use of self-defense. Therefore, I do not

 join the portion of the majority’s opinion that places a causal nexus element into

 section 14-51.4.

¶ 38 “In order to preserve an issue for appellate review, a party must have

 presented to the trial court a timely request, objection, or motion, stating the specific

 grounds for the ruling the party desired the court to make if the specific grounds were

 not apparent from the context.” N.C. R. App. P. 10(a)(1).

 The specificity requirement in Rule 10(a)(1)
 prevents unnecessary retrials by calling possible error to
 the attention of the trial court so that the presiding judge
 may take corrective action if it is required. Moreover, a
 specific objection discourages gamesmanship and prevents
 parties from allowing evidence to be introduced or other
 things to happen during a trial as a matter of trial strategy
 and then assigning error to them if the strategy does not
 work. Practically speaking, Rule 10(a)(1) contextualizes
 the objection for review on appeal, thereby enabling the
 appellate court to identify and thoroughly consider the
 specific legal question raised by the objecting party.
 STATE V. MCLYMORE

 2022-NCSC-12

 Newby, C.J., concurring in the result

 State v. Bursell, 372 N.C. 196, 199, 827 S.E.2d 302, 305 (2019) (citations, internal

 quotation marks, and alterations omitted). Further, “[t]his Court has long held that

 where a theory argued on appeal was not raised before the trial court, ‘the law does

 not permit parties to swap horses between courts in order to get a better mount in

 the Supreme Court.’ ” State v. Sharpe, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996)

 (emphasis added) (quoting Weil v. Herring, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)).

¶ 39 During the charge conference in the present case, defendant made the

 following objection to the trial court’s proposed jury instructions:

 [Defendant] has a common-law right of self-defense. It’s not
 abdicated by the statute. The statute speaks of a
 justification under the statute of self-defense under
 common law is not abdicated by that statute. We’d also
 object under that [defendant] has a constitutional right to
 defend his own life and under the due process clause of the
 Fifth Amendment and the 14th Amendment, we believe
 that the limitation of his right to defend his own life with
 that application—with the Court’s application—or
 interpretation and application of the statute would infringe
 upon that due process right. And finally, that to do so is a
 constitutional violation of that right.

¶ 40 Defendant’s objection provided two specific theories for why the trial court

 should instruct the jury on common-law self-defense: (1) section 14-51.4 does not

 disqualify the use of common-law self-defense; and (2) if section 14-51.4 does supplant

 the common law, then the trial court’s application of section 14-51.4 to limit

 defendant’s right to defend his own life would violate the Due Process Clause of both

 the Fifth and Fourteenth Amendments.
 STATE V. MCLYMORE

 2022-NCSC-12

 Newby, C.J., concurring in the result

¶ 41 On appeal, however, defendant now asserts a new theory: the trial court’s

 instruction was erroneous because it did not state that section 14-51.4 requires the

 State to prove a causal nexus between defendant’s commission of a felony and his use

 of defensive force. The majority’s conclusion that this new theory was either

 encompassed within defendant’s broad due process argument or apparent from the

 context is unfortunate. Based upon the majority’s reasoning, a defendant could

 generally assert before the trial court that an instruction violates his due process

 rights and later present on appeal any number of theories to support the overbroad

 challenge. This is precisely what Rule 10’s specificity requirement seeks to avoid. See

 N.C. R. App. P. 10(a)(1); Sharpe, 344 N.C. at 194, 473 S.E.2d at 5. Therefore, since

 defendant’s causal nexus argument is not preserved for appellate review, the Court

 should not address it.

¶ 42 Even if defendant’s causal nexus argument were preserved, it is without merit.

 The primary endeavor of courts in construing a statute is to give effect to legislative

 intent. Liberty Mut. Ins. Co. v. Pennington, 356 N.C. 571, 574, 573 S.E.2d 118, 121

 (2002); Stevenson v. City of Durham, 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972).

 If the statutory language is clear and unambiguous, a court should give the words

 their plain and definite meaning. Fowler v. Valencourt, 334 N.C. 345, 348, 435 S.E.2d

 530, 532 (1993). When, however, “a statute is ambiguous, judicial construction must

 be used to ascertain the legislative will.” Burgess v. Your House of Raleigh, Inc., 326
 STATE V. MCLYMORE

 2022-NCSC-12

 Newby, C.J., concurring in the result

 N.C. 205, 209, 388 S.E.2d 134, 136–37 (1990). Furthermore, “where a literal

 interpretation of the language of a statute will lead to absurd results, or contravene

 the manifest purpose of the Legislature, as otherwise expressed, the reason and

 purpose of the law shall control and the strict letter thereof shall be disregarded.”

 Mazda Motors of Am., Inc. v. Sw. Motors, Inc., 296 N.C. 357, 361, 250 S.E.2d 250, 253

 (1979) (quoting State v. Barksdale, 181 N.C. 621, 625, 107 S.E. 505, 507 (1921)).

¶ 43 The relevant portion of section 14-51.4 states that “[t]he justification described

 in . . . [N.C.]G.S. [§] 14-51.3 is not available to a person who used defensive force and

 who . . . [w]as attempting to commit, committing, or escaping after the commission of

 a felony.” N.C.G.S. § 14-51.4 (2021). This language is unambiguous and clearly does

 not include a causal nexus requirement. Nonetheless, the majority claims that it

 would be absurd to interpret section 14-51.4 literally because it would effectively bar

 all convicted felons from ever using a firearm in self-defense. The majority, however,

 ignores the fact that section 14-51.4 in no way prevents felons from legally defending

 themselves with other weapons. This result is not absurd.1 Rather, it reflects a policy

 decision to limit the use of self-defense to the law-abiding. Such an intent is certainly

 sensible given the State’s substantial interests in protecting its citizens and deterring

 1 While this result, on the facts before us, is not so absurd as to require an
 interpretation of the statute different than its plain language, we note that defendant did not
 preserve any constitutional arguments. Accordingly, we express no opinion on whether this
 interpretation violates any federal or state constitutional rights.
 STATE V. MCLYMORE

 2022-NCSC-12

 Newby, C.J., concurring in the result

 recidivism. See State v. Hilton, 378 N.C. 692, 2021-NCSC-115, ¶ 27; Mazda Motors of

 Am., Inc., 296 N.C. at 361, 250 S.E.2d at 253 (“If the language of a statute is free from

 ambiguity and expresses a single, definite, and sensible meaning, judicial

 interpretation is unnecessary and the plain meaning of the statute controls.”).

¶ 44 Here defendant’s behavior was far from law-abiding. At trial, defendant

 admitted that he was a convicted felon due to his previous convictions of common-law

 robbery, larceny of a firearm, and assault inflicting serious bodily injury. He also

 admitted that on 24 March 2014, he entered Andre Womack’s house, engaged in an

 altercation with Womack over money, took Womack’s gun, and shot Womack. The

 next month, defendant used the same gun to rob2 and kill David Washington.

 Defendant’s unlawful possession of the gun enabled him to commit murder.

¶ 45 At the time that defendant killed Washington, he was committing the felonies

 of possession of a firearm by a felon, see N.C.G.S. § 14-415.1(a) (2021), and robbery

 with a dangerous weapon, see N.C.G.S. § 14-87(a) (2021). Section 14-51.4 thus

 disqualifies defendant’s use of perfect self-defense. Therefore, I concur in the result

 only.

 Justice BARRINGER joins in this concurring opinion.

 2 The jury found defendant guilty of robbery with a dangerous weapon.